Commonwealth *v.* McKeithen, Appellant.

Argued September 24, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles B. Prichard,* with him *Charles D. Coll,* for appellant.

*Earle R. Jackson,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, October 30, 1945:

The defendant appeals from a judgment of guilty of murder in the first degree entered upon a jury's verdict in accordance wherewith the learned court below duly imposed sentence of death as fixed by the jury.

The question here involved, as broadly stated by the appellant, is whether he received a fair trial. His only complaint in such regard is that the gratuitous injection of an irrelevant remark by a witness for the Commonwealth, while under cross-examination, prejudiced the defendant in the minds of the jurors and that, accordingly, the trial court committed error when it denied the defendant's motion for the withdrawal of a juror.

The appellant's sole contention is that the asserted prejudice operated to commit the jury to a recommendation of death rather than life imprisonment as the punishment for the crime whereof he was found guilty. He

does not contend that the allegedly prejudicial matter caused the jury to convict him of a crime of higher grade than that of which he was guilty. Nor could he reasonably do so in the light of the evidence in the case. The homicide, for which he was indicted and tried, resulted from blows feloniously inflicted upon the victim by the appellant and an accomplice while they were admittedly engaged in the perpetration of a planned robbery. Those facts in all their incidental detail plainly appear from each of two separate signed statements voluntarily made by the defendant prior to trial as well as by the defendant's testimony as a witness in his own behalf, the statements having been received in evidence at trial without objection or impeachment. Wholly apart from the robbery, the evidence justified a finding by the jury that the killing was done with malice and that it was willful, deliberate and premeditated. It is understandable, therefore, why the appellant does not dispute that the jury was warranted in finding him guilty of murder in the first degree. The competent, relevant and material evidence in the case was quite sufficient to produce that result. In fact, it would be hard to see how the jury could possibly have found otherwise.

An understanding of what actually took place at trial in connection with the matter whereof the appellant complains and of the steps appropriately taken by the learned trial judge to eradicate any possible harm therefrom to the defendant requires that the appellant's contention be rejected as lacking merit.

Dr. J. W. McMeans, the coroner's physician who performed an autopsy on the deceased to determine the cause of death, was an indispensable witness for the prosecution and, necessarily, had been summoned to court for the purpose of testifying. Outside of the courtroom just prior to the beginning of the trial, the doctor was venting to the assistant district attorney in charge of the prosecution his displeasure at being held in court at the expense of several other scheduled engagements.

This occurred in the hearing of the defendant's counsel who interposed to remark facetiously that if the doctor "got real sore" at the district attorney, it might help defendant's counsel in the case.

Shortly thereafter the trial was begun and the doctor was called by the prosecution as its first witness. During his cross-examination and, after he had answered responsively and directly a material question by defendant's counsel, the witness assumed to tell the jury what counsel for the defendant had said to him outside the courtroom a little while before. At the time of the witness's voluntary recital of the irrelevant remark, defendant's counsel did no more than interject, "I was just kidding". With the conclusion of the witness's testimony, the trial was recessed until the following day. Upon its resumption the next morning, defendant's counsel at once addressed the court in the jury's presence, saying that overnight he had given serious thought to the unfair implication in the remark as injected by the witness the day before, that it served to prejudice his client with the jury and that, therefore, he moved for the withdrawal of a juror. The district attorney stated to the court that defendant's counsel "only made that statement [his remark to the doctor] in fun," and suggested that the court instruct the jury appropriately with respect thereto, which the learned trial judge thereupon did, telling the jury, inter alia, in the course of his instruction that "What was referred to by Dr. McMeans, with reference to a conversation with Mr. Coll [defendant's counsel] before the trial started, is to be entirely rejected by you and not in any manner to be considered as bearing upon the testimony that was offered, or upon the merits of this case in any particular. . . . So I am depending upon you that you will not allow what Mr. Coll is fearful might affect your judgment to do so in any way whatsoever."

At the conclusion of this instruction, the court asked counsel for the defendant ". . . is there anything fur-

ther you wish me to say to the jury on the subject?" To which counsel replied, "I do not believe so, your Honor." The motion for the withdrawal of a juror was then refused and the trial was proceeded with uninterruptedly thereafter to verdict.

We think that the instruction thus given the jury by the trial court was legally adequate to the circumstances and that it fully comported with a scrupulous regard for the defendant's right to a fair trial. To say now that the irrelevant remark volunteered by the witness caused the jurors to recommend death rather than life imprisonment as the punishment would be tantamount to imputing to the jurors a perverse indulgence of spite in their discharge of a solemn duty in utter disregard of the clear admonition by the court. The record in this case furnishes no legal basis for any such imputation. The power to determine, as between death and life imprisonment, the punishment for a conviction of first degree murder lies exclusively with the jury. When made upon an appropriate conviction, a court may not arbitrarily set aside a jury's recommendation as to the penalty merely on an unsupported assertion of prejudice and, especially, not in a case such as the present where prejudice cannot reasonably be thought to have existed.

The appellant's assignments of error, under which the point already considered was alone raised, must be overruled. But, notwithstanding the narrow scope of the appellant's contention, as the appeal involves a conviction of murder in the first degree, we have independently reviewed the law and the evidence in the entire case, as we are bidden by statute to do (Act of February 15, 1870, P. L. 15, Sec. 2), and, as already indicated, find that the ingredients necessary to constitute murder in the first degree were proven to exist. As to the trial itself, the appellant recognizes that "The record is singularly free from objections by either side. Both sides coöperated fully in developing all the available facts". (Brief for appellant, p. 13). The case was submitted to the jury

in a charge which was eminently fair and impartial and whereof the appellant makes no complaint whatsoever. The present fundamental inquiry is whether the appellant was convicted and sentenced as the result of a fair trial. That he was, the record leaves no shadow of doubt.

We cannot dispose of the case, however, without further reference to the manner and conduct of the coroner's physician as a witness for the Commonwealth. This, we do for the possible guidance of a trial court should any similar situation unfortunately occur in the future. Not only was the witness's volunteered recital of counsel's privately personal and innocently made remark as improper as it was uncalled for but, according to the learned trial judge in his caution to the jury, the witness had "appeared to be somewhat testy in his manner of testifying . . . ." As the district attorney put it, the doctor had been "very, very impatient". During his cross-examination, he unfairly suggested that defendant's counsel was quibbling and then charged that defendant's counsel had said that he (the witness) did not know of the matters concerning which he was testifying for which assertion there was not the slightest justification in anything said by defendant's counsel. At another time, the witness gratuitously and just as mistakenly opined that what he was being cross-examined about did not have "anything to do with this case". A trial judge is, of course, well-advised when he refrains from interfering unnecessarily with a witness while testifying. But, when a witness becomes combative, assumes to apply rules of evidence and generally exhibits a hostile attitude toward counsel, the trial court may very properly and, in the interest of justice, should caution the witness to answer in a dispassionate and objective manner the questions asked of him, and thenceforth see that he does so. So much is necessary in faith to the integrity of the oath which the witness takes to tell the truth, the whole truth, and *nothing* but the truth.

Furthermore, if the private engagements of the coroner's physician are such as to render it inconvenient for

him to attend a trial, where his appearance is necessary because of his knowledge officially gained, he would do well to cease making autopsies in homicide cases.

The judgment is affirmed and the record remitted for execution of the sentence.